IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRITTANY GRANT**<br>Pittsburgh, PA 15232<br><br>                  Plaintiff,<br><br>          v.<br><br>**NEXSTAR MEDIA GROUP, INC.**<br>**d/b/a THE HILL**<br>1625 K. Street NW<br>Washington, DC 20006<br><br>and<br><br>**NEXSTAR MEDIA INC.**<br>**d/b/a THE HILL**<br>1625 K. Street NW<br>Washington, DC 20006<br><br>and<br><br>**CAPITOL HILL PUBLISHING CORP**<br>**d/b/a THE HILL**<br>1625 K. Street NW<br>Washington, DC 20006<br><br><br>              Defendants. | **CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Brittany Grant ("Plaintiff"), brings this action against her former employers, Nexstar Media Group, Inc., Nexstar Media, Inc., and Capitol Hill Publishing Corp, all d/b/a The Hill (collectively, "Defendants"), for discriminating against Plaintiff based upon her sex (female) and her disability, and for retaliating against Plaintiff for submitting complaints of sex and disability discrimination.

Defendants' unlawful conduct includes subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment for false and pretextual reasons, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II.   PARTIES

1.      Plaintiff, Brittany Grant, is an individual and citizen of Pennsylvania. Plaintiff currently resides in Pittsburgh, PA.

2.      Plaintiff is female.

3.      At all relevant times, Plaintiff was "disabled" in that she suffered from an impairment, which substantially limited one or more of her major life activities, had a record of impairment and/or was regarded as having such impairment.

4.      This includes *inter alia* Plaintiff's kidney-related issues, including stage 4 chronic kidney disease, which progressed to end-stage renal failure, requiring a kidney transplant.

5.      Defendant Nexstar Media Inc. is a Delaware corporation with a principal place of business located at 1625 K. Street NW, Washington, DC 20006.

6.      Defendant Nexstar Media Inc. is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

7.      Defendant Nexstar Media Group, Inc. is a Delaware corporation with a principal place of business located at 1625 K. Street NW, Washington, DC 20006.

8.      Defendant Nexstar Media Group, Inc. is engaged in an industry affecting

interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

9.      Defendant Capitol Hill Publishing Corp. is a New York corporation with a principal place of business located at 1625 K. Street NW, Washington, DC 20006.

10.     Defendant Capitol Hill Publishing Corp. is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

11.     Defendants collectively maintain and operate offices located in Pennsylvania, including within this judicial district.

12.     During the time period of approximately March 2020 through her July 2022 termination, Plaintiff primarily worked for Defendants' remotely from her home office in Morris, PA, in Lycoming County.

13.     Defendant Nexstar Media, Inc., Defendant Nexstar Media Group, Inc. and Defendant Capitol Hill Publishing Corp are "alter egos" of each other.

14.     Defendants collectively presented themselves as a single company, including as "The Hill," such that third parties dealt with them as one unit.

15.     During Plaintiff's employment with Defendants, Plaintiff received a tax Form W-2 from Defendant Capitol Hill Publishing Corp..

16.     Defendants share, *inter alia*, Common ownership, employees, office locations, personnel policies and employment practices.

17.     Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the unlawful actions complained of herein.

18.     At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment

with Defendants and in furtherance of Defendants' business.

19.     At all relevant times, Defendants employed fifteen (15) or more employees.

20.     At all relevant times, Defendants acted as an "employer" within the meaning of the statutes forming the basis of this matter.

21.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the statutes forming the basis of this matter.

### III.     JURISDICTION AND VENUE

22.     The causes of action forming the basis of this matter arise under Title VII, Section 1981 and the PHRA.

23.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5, 28 U.S.C. §1331 and 28 U.S.C. §1332.

24.     The District Court has jurisdiction over Count II (ADA) pursuant to 42 U.S.C. §12117(a), 28 U.S.C. §1331 and 28 U.S.C. §1332.

25.     The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367 and 28 U.S.C. §1332.

26.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

27.     On or about July 11, 2022, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination alleged herein. This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as "Exhibit 1" is a true and correct copy of that PHRC Complaint (with personal identifying information redacted).

28.     On or about July 26, 2022, Plaintiff filed a Second Complaint with the PHRC

complaining of the acts of discrimination and retaliation alleged herein. This Charge was cross-filed with the EEOC. Attached hereto, incorporated herein, and marked as "Exhibit 2" is a true and correct copy of that PHRC Second Complaint (with personal identifying information redacted).

29.     On or about August 28, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue in connection with her initial PHRC Complaint. Attached hereto, incorporated herein, and marked as "Exhibit 3" is a true and correct copy of that Notice (with personal identifying information redacted).

30.     On or about August 28, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue in connection with her Second PHRC Complaint. Attached hereto, incorporated herein, and marked as "Exhibit 4" is a true and correct copy of that Notice (with personal identifying information redacted).

31.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.     FACTUAL ALLEGATIONS

32.     Plaintiff began working at Defendants on or about April 8, 2015.

33.     At all relevant times, Plaintiff primarily worked out of her home office in Morris, Pennsylvania.

34.     At the time of her termination, Plaintiff held the position of Associate Publisher.

35.     Plaintiff consistently performed her job duties in a highly competent manner.

36.     At the time of her termination, Plaintiff reported to Richard "Wil" Danielson ("Danielson") (male), Senior Vice President, Digital Sales.

37.     Danielson reports to Lori Tavoularis ("Tavoularis") (female), Executive Vice

President and Chief Revenue Officer.

38.     In or around October 2017, Plaintiff was diagnosed with stage 4 chronic kidney disease, which progressed to end-stage renal failure.

39.     On or about March 9, 2020, Plaintiff underwent surgery and a kidney transplant in connection with her stage 4 chronic kidney disease.

40.     From approximately March 9, 2020 to June 1, 2020, Plaintiff was out of work on a medical leave of absence in connection with her kidney transplant surgery, kidney disease treatments, and recovery.

41.     In or about December 2021, Plaintiff began reporting to Danielson.

42.     Danielson had no role in Plaintiff being hired at Defendants.

43.     Danielson was aware of Plaintiff's kidney disease and transplant history.

44.     Tavoularis was aware of Plaintiff's kidney disease and transplant history.

45.     In addition to Plaintiff, Mark Wildman ("Wildman") (male), Head of National Sales, reported to Danielson.

46.     Plaintiff was more qualified to perform Wildman's position as compared to Wildman.

47.     Plaintiff was treated differently and worse, and in a more hostile and dismissive manner than male and/or nondisabled employees were treated at Defendants.

48.     Plaintiff was held to a harsher, more stringent standard than male and/or nondisabled employees.

49.     Plaintiff was told to turn on her camera during virtual meetings while her male and/or nondisabled colleagues were not told to turn on their cameras.

50.     Plaintiff was told to smile more while her male and/or nondisabled colleagues

6

were not.

51.     Plaintiff was assigned menial, administrative tasks while her male and/or nondisabled colleagues were not.

52.     Plaintiff was told that she was passive aggressive while her male and/or nondisabled colleagues were not told the same.

53.     Jason Jedlinski ("Jedlinski") (male), General Manager, communicated with Plaintiff in a condescending and intimidating manner.

54.     Jedlinski did not treat male and/or nondisabled employees in the same manner.

55.     Jedlinski interfered with Plaintiff's work and attempted to prevent Plaintiff from succeeding, which would impact Plaintiff's compensation.

56.     Jedlinski did not do the same to male and/or nondisabled employees.

57.     Jedlinski was aware of Plaintiff's kidney disease and transplant history.

58.     Plaintiff's performance was unjustly criticized.

59.     Plaintiff was marginalized.

60.     Plaintiff's ideas and accomplishments were not recognized while her male and/or nondisabled colleagues' ideas and accomplishments were.

61.     Plaintiff was ignored and excluded.

62.     Certain of Plaintiff's job duties and responsibilities were removed without legitimate explanation.

63.     Plaintiff was excluded from communications and meetings related to her job duties and responsibilities.

64.     On or about March 30, 2022, Plaintiff went out of work on a medical leave of absence due to an infection related to her kidney transplant, which required hospitalization.

65.     From approximately March 30, 2022 to April 3, 2022, Plaintiff was out of work on a medical leave of absence in connection with her disability.

66.     On or about April 3, 2022, Plaintiff returned to work from her medical leave of absence.

67.     On or about April 14, 2022, Plaintiff went out of work on a medical leave of absence due to an infection related to her kidney transplant, which required hospitalization.

68.     From approximately April 14, 2022 to April 19, 2022, Plaintiff was out of work on a medical leave of absence in connection with her disability.

69.     On or about April 19, 2022, Plaintiff returned to work from her medical leave of absence.

70.     On or about April 27, 2022, Plaintiff complained to Danielson about disability discrimination.

71.     Plaintiff explained to Danielson that it felt like she was being penalized and treated worse following, and as a result of, her recent disability-related medical leave.

72.     On or about May 13, 2022, in a meeting with Danielson, Tavoularis, Anderson, Plaintiff was provided with two (2) options: be placed on a Performance Improvement Plan ("PIP"); or resign from her employment and be paid three (3) months of compensation in exchange for a release of all claims against Defendants and confidentiality.

73.     Plaintiff was handed a document, dated May 12, 2022, that falsely stated that she had "voluntarily resigned [her] employment with notice that [her] last day would be today, May 12, 2022."

74.     Plaintiff refused to resign from her employment.

75.     Plaintiff's performance did not warrant a PIP.

8

76. The PIP stated the following: "Improve verbal & written communication with Senior Leadership – Communicate clearly, mitigate passive aggressive comments, attend meetings on camera, no negative comments about team members."

77. The PIP stated: "If you fail to make the required improvement in the areas identified, your employment will be terminated at the end of the plan period; however, the Company reserves the right to terminate your employment during the period if it becomes clear you are not making sufficient progress, or for other reasons unrelated to your performance (e.g. misconduct, lack of work). If you make the required improvement, you must continue to perform at a satisfactory level after the performance plan period ends, or your employment will be terminated."

78. The PIP timeframe was sixty (60) days.

79. The PIP stated that Plaintiff would meet with Danielson eight (8) times during the sixty (60) day PIP period.

80. The PIP document provided a section where specific dates for the eight (8) meetings were to be identified, but that the section was blank.

81. Within eighteen (18) business days of Plaintiff's return to work from her medical leave of absence, she was presented with the option of being placed on a PIP or resigning.

82. Similarly situated male and/or nondisabled employees and/or employees who had not recently taken medical leave were not placed on a PIP.

83. Defendants placed Plaintiff on a PIP because of her sex and/or her disability and/or Plaintiff having taken a medical leave of absence.

84. On or about June 21, 2022, in an email to Danielson, Tavoularis, and Emily Anderson ("Anderson") (female), Human Resources, Plaintiff complained of sex and disability

discrimination.

85.     Plaintiff rebutted the false statements and misrepresentations in the PIP, and stated the following: "I was completely blindsided our conversation on May 13th and was in utter shock with the feedback provided in the performance improvement plan and that I was presented with 'the alternative' of resignation with three months of severance. This is particularly troublesome both in the timing on the heels of my return from medical leave and as I've been nothing but awarded and appreciated in the past for my dedication, loyalty, and results. I believe that I have been discriminated against because of my sex and my medical condition. As previously indicated, I am writing this as an addendum to my performance improvement plan presented to me."

86.     On or about June 22, 2022, in an email from Tavoularis, she acknowledged receipt of Plaintiff's above email and stated that Plaintiff's email had been sent to Corporate Human Resources, who would be reaching out to her shortly.

87.     Plaintiff received no further communication from Defendants regarding her sex and disability discrimination complaint.

88.     On or about July 7, 2022, Plaintiff was told that Defendants terminated one of her direct reports, following his resignation notice, without her knowledge or input.

89.     On or about July 11, 2022, Plaintiff filed her first PHRC Complaint.

90.     On or about July 11, 2022, in an email to Danielson, Tavoularis, Anderson and Kari Torgerson ("Torgerson") (female), Regional Human Resources Director, which attached a copy of Plaintiff's first PHRC Complaint, Plaintiff stated the following: "As a courtesy, I want to inform you that I have filed a Complaint of discrimination with the PHRC, a copy of which is attached."

91.     On or about July 11, 2022, following the above, in an email from Torgerson, she acknowledged receipt of Plaintiff's email attaching a courtesy copy of the PHRC Complaint.

92.     On or about July 22, 2022, in a virtual meeting with Danielson and Tavoularis, Defendants terminated Plaintiff's employment, effective immediately.

93.     Defendants' stated reason for terminating Plaintiff's employment was that effort was made but the Performance Improvement Plan ("PIP") was not met.

94.     The PIP Plaintiff had been issued ended on or about July 1, 2022.

95.     The PIP had not been extended.

96.     On or about July 25, 2022, in an email to Anderson and Torgerson, Plaintiff stated that she had not received any documentation regarding her termination, and that "I believe that I was terminated because of my disability, sex, and complaining of disability and sex discrimination, including having filed a PHRC Complaint two weeks ago."

97.     Defendants did not deny that Plaintiff was terminated because of her disability, sex, and complaints of disability and sex discrimination, including having filed a PHRC Complaint within two (2) weeks of her termination.

98.     At no time did Defendants investigate Plaintiff's complaints of disability discrimination.

99.     At no time did Defendants investigate Plaintiff's complaints of sex discrimination.

100.    Before Plaintiff disclosed her medical condition to Defendants, she had no disciplinary or performance issues.

101.    Before Plaintiff initiated medical leaves in March and April 2022, Plaintiff had not been issued any type of corrective action, progressive discipline or PIP.

102.     Before Plaintiff initiated medical leaves in March and April 2022, Defendants had not suggested that she should resign.

103.     Defendants failed to take any action to remedy or prevent the sex and disability discrimination to which Plaintiff was subjected.

104.     Defendants terminated Plaintiff's employment because of her sex and/or disability and/or medical leave and/or engaging in protected activity.

105.     Defendants subjected Plaintiff to a hostile work environment because of her sex and/or disability and/or medical leave and/or engaging in protected activity.

106.      Defendants' sex and disability discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

107.     Defendants' comments and conduct evidence a bias against female and/or disabled employees and/or employees who take medical leave and/or engage in protected activity.

108.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

109.     The discriminatory conduct, as alleged herein, was severe and pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

## <u>COUNT I – TITLE VII</u>

110.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

111.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

112.    Defendants acted intentionally and willfully, with malice and/or reckless indifference to Plaintiff's federally protected rights, and with knowledge that their actions violated the law and/or with knowledge that their actions may violate the law, warranting the imposition of punitive damages.

113.    As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

114.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

115.    No previous application has been made for the relief requested herein.

## COUNT II – ADA

116.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

117.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

118.    As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

119.    Said violations were willful. The conduct of Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

120.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless this Court grants the relief requested herein.

121.    No previous application has been made for the relief requested herein.

## COUNT III – PHRA

122.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

123.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

124.    As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

125.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

126.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Title VII, the ADA and the PHRA;

(b) enjoining and permanently restraining the violations alleged herein;

(c) entering judgment against Defendants and in favor of Plaintiff in an amount to be

14

determined;

(d) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(e) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(f) awarding punitive damages to Plaintiff under Title VII and ADA;

(g) awarding Plaintiff such other damages as are appropriate under Title VII, ADA and the PHRA;

(h) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(i) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

 

**CONSOLE MATTIACCI LAW LLC**

Dated: November 21, 2023           By: /s/ *Kevin Console*
Kevin Console, Esquire
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676
kevinconsole@consolelaw.com

*Attorneys for Plaintiff, Brittany Grant*